1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   BAE Systems Mobility & Protection    )    No. CV-08-1697-PHX-JAT (Lead)
    Systems Inc., a Delaware corporation; )    No. CV-08-2060-PHX-JAT (Cons)
10  BAE Systems Aerospace & Defense       )
    Group Inc., an Arizona corporation,   )    **ORDER**
11                                        )
                 Plaintiffs,              )
12                                        )
    vs.                                   )
13                                        )
    ArmorWorks Enterprises, LLC, an       )
14  Arizona limited liability partnership, )
                                          )
15               Defendant.               )
                                          )
16  _____  )
                                          )
17  ArmorWorks Enterprises, LLC, an       )
    Arizona limited liability company,    )
18                                        )
                 Plaintiff,               )
19                                        )
    vs.                                   )
20                                        )
    BAE Systems AH, Inc., a Delaware      )
21  corporation; BAE Systems Mobility &   )
    Protection Systems, Inc., a Delaware  )
22  corporation; BAE Systems Aerospace &  )
    Defense Group Inc., an Arizona        )
23  corporation,                          )
                                          )
24               Defendants.              )
                                          )
25  _____  )

26  //

27  //

28  //

1    Pending before this Court are the following motions for summary judgment: (1)
2   Motion for Summary Judgment (Doc. # 228[1] or "MSJ") filed by BAE Systems AH, Inc.,
3   BAE Systems Mobility & Protection Systems Inc., and BAE Systems Aerospace & Defense
4   Group Inc. (collectively, "BAE Systems"); and (2) Motion for Partial Summary Judgment
5   on Liability[2] (Doc. # 222 or "PMSJ") filed by ArmorWorks Enterprises, LLC
6   ("ArmorWorks").  The Court conducted a hearing on the pending motions for summary
7   judgment on March 16, 2011.  Because ArmorWorks has failed to meet its burden with
8   respect to essential elements of its case, on which it will bear the burden at trial, the Court
9   grants BAE Systems's Motion for Summary Judgment, and, in so doing, denies
10  ArmorWorks's Motion for Partial Summary Judgment on Liability.

11  **I.    BACKGROUND**

12    Although the parties strenuously dispute the relevance and legal import of, and
13  inferences to be drawn from, many aspects of this case, the relevant underlying facts are
14  largely undisputed.[3]

15    In the early 2000s, U.S. troops in Afghanistan and Iraq wore body armor vests with
16  front and back torso Small Arms Protective Inserts ("SAPI") comprised primarily of ceramic
17  tile and ballistic fabric.  (MSJ at p. 3; PMSJ at p. 4 n.3.)

18    From 2002 to 2007, three companies won the majority of the U.S. military's contracts

---

[1]  The Court permitted BAE Systems to file an unredacted version of its motion under seal.  (Doc. # 215.)

[2]  ArmorWorks's motion does not address or seek summary judgment as to ArmorWorks's actual or punitive damages.  (PMSJ at p. 12 n.7.)

[3]  The Court notes that ArmorWorks and BAE Systems have taken certain liberties with their characterizations of the record.  Contrary to the Local Rules, the parties' various statements of fact contain instances of argument, factually unsupported allegations, conclusory statements, and questionable inferences.  *See* Rule of Practice of the U.S. District Court for the District of Arizona 56.1(a)–(b).  Although the Court has discretion to strike these statements, the Court finds this action unnecessary, because the parties alerted the Court to these "liberties" in their briefs and controverting statements of fact.

for body armor: Ceradyne, Inc., ArmorWorks, and Armor Holdings, Inc.[4] ("Armor Holdings"). (MSJ at p. 4; PMSJ at pp. 3–4.) Ceradyne, Inc. produced its own ceramic tile. (MSJ at p. 4.) Whereas, ArmorWorks and Armor Holdings relied on third-party suppliers to provide the ceramic tile necessary to manufacture body armor. (*Id.*; PMSJ at p. 4.) This action arises in connection with the parties' purchase of ceramic tiles from Alanx Wear Solutions, Inc.[5] ("Alanx").

In early 2002, ArmorWorks and Alanx entered into a Memorandum of Understanding (the "2002 MOU"), which set forth the terms of their supply relationship. (MSJ at p. 4; PMSJ at p. 4.) The 2002 MOU contained an exclusivity provision, which provided that Alanx could not sell SAPI tiles to any third party for a period of 24-months from the date of the U.S. military's approval and issuance of orders. (Doc. # 223 or "AW SOF" at ¶ 37(c); Doc. # 233 or "BAE RSOF" at ¶ 37.) The 2002 MOU also provided that at the conclusion of the 24-month exclusivity period, ArmorWorks had the option to enter into a 24-month mutually exclusive agreement with Alanx. (*Id.*) The 2002 MOU remained in force and effect from March 1, 2002 to December 31, 2004. (Doc. # 224, Ex. 22 at p. 3, ¶ 11.)

In February 2003, ArmorWorks and Protech Armored Products of Massachusetts, Inc. ("Protech"), a licensee of ArmorWorks and a subsidiary of Armor Holdings, made arrangements for Protect to purchase "Process B" SAPI tile from Alanx without breaching the exclusivity provision in the 2002 MOU. (AW SOF at ¶ 38; BAE RSOF at ¶ 38.)

In late 2003, after acquiring Simula, Armor Holdings began looking for additional

---

[4] BAE Systems acquired Armor Holdings in 2007. Earlier, in December 2003, Armor Holdings acquired body armor manufacturer Simula. To alleviate confusion, this Order will refer to the body armor manufacturer as "Armor Holdings," because the actions forming the basis of ArmorWorks's Complaint occurred prior to BAE Systems's acquisition of Armor Holdings, and immediately after Armor Holdings's acquisition of Simula.

[5] Alanx was acquired by Ceramic Protection Corporation ("CPC") in early September 2004, and later changed its name to Ceramic Protection Corporation of America. (MSJ at p. 4; PMSJ at p. 8; Doc. # 1 at ¶ 25.) To alleviate confusion, the Court will continue to refer to the ceramic tile supplier as "Alanx" throughout this Order.

1    sources of SAPI tile.  In May and June 2004, Armor Holdings entered into discussions with

2    Alanx about Armor Holdings's interest in potentially acquiring Alanx.  (Doc. # 229 or "BAE

3    SOF" at ¶14; Doc. # 231 or "AW RSOF" at ¶ 14.)  During their discussions, Armor Holdings

4    learned from Alanx that Alanx had entered into an exclusive supply arrangement with

5    ArmorWorks governed by the 2002 MOU.  (*Id.*)  Armor Holdings also acknowledged that

6    it learned "high-level" information about Alanx's sales of SAPI tile to ArmorWorks.  (MSJ

7    at p. 4.)  Handwritten notes, taken by an Armor Holdings employee in connection with a

8    meeting with Alanx representatives, indicate that Armor Holdings was aware of

9    ArmorWorks's option to extend the 2002 MOU for an additional 24 months.  (BAE SOF ¶

10   15; AW RSOF ¶ 15.)  The handwritten notes read: "MOU expires in December"; "Clause for

11   continued mutual exclusivity"; "Right to extend"; "'Not likely to'"; "MOU with AW"; and

12   "Discussions ongoing with AW".  (Doc. # 225, Ex. 82.)  The meaning of these notes is

13   debated by the parties.  (BAE SOF ¶ 15; AW RSOF ¶ 15.)  The discussions regarding Armor

14   Holdings's potential acquisition of Alanx ended in August 2004 when CPC acquired Alanx.

15   (AW SOF at ¶ 101; BAE RSOF at ¶ 101.)

16       In October 2004, Protech ordered Process B SAPI ceramic tiles from Alanx for

17   delivery in January 2005.  (AW SOF ¶ 102, BAE RSOF ¶ 102.)  An internal Armor Holdings

18   email indicates that the order was "placed through Protech to avoid conflict with AW."  (*Id.*)

19   The parties dispute the meaning of this email, and the purpose behind Protech's placement

20   of the order.  Besides a small amount of testing tiles, Armor Holdings did not receive any

21   ceramic tile through this order, because the U.S. military converted its body armor contracts

22   from requiring SAPI to requiring Enhanced Small Arms Protective Inserts ("ESAPI"), and

23   Armor Holdings informed Alanx that it did not need any of the SAPI tile that had been

24   ordered before the conversion to ESAPI.  (BAE RSOF ¶ 102(c).)

25       Three months after the expiration of the 2002 MOU, ArmorWorks and Alanx entered

26

27

28

into a Supply Agreement, dated effective as of March 10, 2005[6] (the "2005 Agreement"). (Doc. # 230-1, Ex. 8.)  The 2005 Agreement provides that the parties may mutually agree that Alanx may sell ceramic tiles directly to ArmorWorks's licensees or other approved entities, provided that minimum supply requirements of ArmorWorks are met, a sales commission is paid to ArmorWorks, and Alanx does not charge prices lower than Alanx's prices to ArmorWorks.  (*Id.* at p. 10, ¶ 18.)  Although described by ArmorWorks in its briefs and during oral argument as a "follow-on" supply agreement, the 2005 Agreement does not reference the 2002 MOU or a 24-month mutual exclusivity period.  Rather, the 2005 Agreement includes an integration or merger clause, which provides that the 2005 Agreement "is the final, complete and exclusive statement of the agreement between the parties with relation to the subject matter of this Agreement."  (*Id.* at p. 11, ¶ 19(e).)

As mentioned above, in early 2005, the U.S. military transitioned from using body armor containing SAPI to body armor containing ESAPI.  (MSJ at p. 4; PMSJ at p. 4 n.3.) In early August 2005, Armor Holdings was qualified to provide body armor containing ESAPI to the U.S. Miliary, and began ordering significant quantities of ESAPI tile from Alanx.  (MSJ at p. 6; PMSJ at p. 10.)  The supply orders initially were placed through Protech on August 18, 2005.  (AW SOF at ¶ 127; BAE RSOF at ¶ 127.)  On November 7, 2005, Armor Holdings and Alanx entered into a Long Term Contract for the supply of ESAPI tiles.  (AW SOF at ¶ 133; BAE RSOF at ¶ 133.)

In mid-January 2006, Alanx inadvertently sent to ArmorWorks an invoice intended for Armor Holdings for the sale of tile in November 2005.  (*Id*.)  The invoice alerted ArmorWorks to the fact that Alanx was selling tile to Armor Holdings.  (*Id.*)  In contravention of the exclusivity provisions of the 2005 Agreement, ArmorWorks did not approve of Alanx's supply of tile to Armor Holdings, and it did not receive sales

---

[6] The recitals of the 2005 Agreement state: "This Supply Agreement [] is entered into effective as of the 10th day of March 2005".  However, in a subsequent provision of the 2005 Agreement, the term "Effective Date" is defined as December 31, 2004.  (Doc. # 230-1, Ex. 8 at p. 2, ¶ 1(k).)

1    commissions in connection with the sale of the tile to Armor Holdings.  (MSJ at p. 6; PMSJ

2    at p. 11.)  Additionally, the prices Alanx charged Armor Holdings for ESAPI tile were lower

3    than the prices Alanx charged ArmorWorks for tile.  (*Id.*)

4         Armed with the invoice, ArmorWorks confronted Alanx about the unapproved supply

5    relationship with Armor Holdings.  (*Id.*)  In early September 2006, ArmorWorks terminated

6    its supply relationship with Alanx, and litigation between ArmorWorks and Alanx began

7    shortly thereafter. (*Id.*)  ArmorWorks's complaint against Alanx alleged that Alanx breached

8    the 2005 Agreement by selling tile at lower prices to Armor Holdings.  *See ArmorWorks*

9    *Enter., LLC v. Ceramic Corp. of Am.*, CV 06-2170-PHX-SRB (Doc. # 1 or "Compl.").  And,

10   Alanx's complaint against ArmorWorks alleged that ArmorWorks breached the 2005

11   Agreement by failing to order the minimum quantities of tiles required under the 2005

12   Agreement. *See Ceramic Protection Corp. of Am. v. ArmorWorks Enter., LLP*, CV 06-2149-

13   PHX-SRB (Doc. # 1).  Alanx and ArmorWorks settled in 2007.  (*Id.*)

14        On September 15, 2008, following a demand letter from ArmorWorks, BAE Systems

15   brought this action seeking declaratory relief.  (Doc. # 1.)  On November 6, 2008,

16   ArmorWorks filed a separate action against BAE Systems.  *ArmorWorks Enter., LLC v. BAE*

17   *Sys. Aerospace Def. Group*, CV 08-2060-PHX-FJM (Doc. # 1) (hereinafter, "(Compl.)").

18   On April 13, 2009, the Court granted BAE Systems's motion to transfer and consolidate the

19   separate actions.  (Doc. # 33.)  ArmorWorks asserts claims against BAE Systems for (1)

20   violation of the Robinson-Patman Act, (2) tortious interference with contract, (3) tortious

21   interference with prospective business advantage, and (4) aiding and abetting fraud.

22   **II.    LEGAL STANDARD**

23        Summary judgment is appropriate when "the movant shows that there is no genuine

24   issue as to any material fact and that the moving party is entitled to summary judgment as a

25   matter of law."  FED.R.CIV.P. 56(a).  A party asserting that a fact cannot be or is genuinely

26   disputed must support that assertion by "citing to particular parts of materials in the record,"

27   including depositions, affidavits, interrogatory answers or other materials, or by "showing

28   that materials cited do not establish the absence or presence of a genuine dispute, or that an

1    adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1).  Thus,

2    summary judgment is mandated "against a party who fails to make a showing sufficient to

3    establish the existence of an element essential to that party's case, and on which that party

4    will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

5        Initially, the movant bears the burden of pointing out to the Court the basis for the

6    motion and the elements of the causes of action upon which the non-movant will be unable

7    to establish a genuine issue of material fact. *Id.* at 323.  The burden then shifts to the non-

8    movant to establish the existence of material fact. *Id.*  The non-movant "must do more than

9    simply show that there is some metaphysical doubt as to the material facts" by "com[ing]

10   forward with 'specific facts showing that there is a *genuine* issue for trial.'" *Matsushita Elec.*

11   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting FED.R.CIV.P. 56(e)

12   (1963) (amended 2010)).

13       A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could

14   return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

15   (1986); *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004) ("A genuine issue of fact

16   is one that could reasonably be resolved in favor of either party.").  The non-movant's bare

17   assertions, standing alone, are insufficient to create a material issue of fact and defeat a

18   motion for summary judgment.  *Liberty Lobby*, 477 U.S. at 247–48.  However, in the

19   summary judgment context, the Court construes all disputed facts in the light most favorable

20   to the non-moving party. *Ellison*, 357 F.3d at 1075.

21       When parties submit cross-motions for summary judgment on the same claim or

22   issues, each motion must be considered on its own merits and analyzed under Rule 56.  *Fair*

23   *Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir.

24   2001).  The failure of one party to carry its burden does not automatically mean that the

25   opposing party has satisfied its burden.  It is certainly conceivable that both parties may have

26   failed to meet their burden of proving they are entitled to summary judgment, in which case

27   the Court properly denies both motions.

28

1    **III.    ANALYSIS**

2        Here, both parties have moved for summary judgment in their favor.  ArmorWorks

3    moves for summary judgment adjudicating BAE Systems's liability on all four counts set

4    forth in ArmorWorks's Complaint, leaving a determination of damages for the jury.  (PMSJ

5    at p. 1.)  Whereas, BAE Systems moves for summary judgment in its favor on all four counts

6    set forth in ArmorWorks's Complaint.  (MSJ at p. 1.)

7        **A.    Tortious Interference Claims**

8        In Arizona, to establish liability for tortious interference with contract or business

9    expectancy, a plaintiff must prove: (1) the existence of a valid contractual relationship or

10   business expectancy, (2) the interferor's knowledge of the relationship or expectancy, (3)

11   intentional interference inducing or causing a breach, (4) resultant damage to the party whose

12   relationship has been disrupted, and (5) that the defendant acted improperly.  *Wells Fargo*

13   *Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38

14   P.3d 12, 31 (Ariz. 2002) (citing RESTATEMENT (SECOND) OF TORTS § 766 (1979)); *Hill v.*

15   *Peterson*, 35 P.3d 417, 420 (Ariz. App. 2001).

16       Count two of ArmorWorks's Complaint alleges that Armor Holdings tortiously

17   interfered with and induced Alanx to breach its contract with ArmorWorks.  (Compl. at ¶ 52.)

18   Count three of ArmorWorks's Complaint alleges that Armor Holdings tortiously interfered

19   with ArmorWorks's ability to obtain new U.S. military supply contracts by causing Alanx

20   not to fulfill ArmorWorks's minimum requirements for ceramic tiles.  (Compl. at ¶¶ 57–58.)

21   ArmorWorks argues that Armor Holdings's admissions in internal documents and deposition

22   testimony establish beyond dispute each of the elements of a claim for tortious interference

23   with contract and a claim for tortious interference with prospective business advantage.

24       **1.    Tortious Interference with Contract**

25       ArmorWorks alleges that "Armor Holdings intentionally interfered with and induced

26

27

28

Alanx[]'s breach of the New Supply Agreement."[7]  (Compl. ¶ 52.)  In order to establish a *prima facie* case for tortious interference with contractual relations, ArmorWorks must establish that Armor Holdings had knowledge of the relationship in which it was purportedly interfering.  "To be subject to liability . . . , the actor must have knowledge of the contract with which he is interfering and of the fact that he is interfering with the performance of the contract."  RESTATEMENT § 766 cmt. i.  ArmorWorks's evidence that Armor Holdings knew or should have known of the ArmorWorks/Alanx supply relationship is insufficient to establish that Armor Holdings had knowledge of the exclusive nature of the relationship in 2005 when Armor Holdings acquired ceramic tile from Alanx.

ArmorWorks argues that: (1) it was common knowledge at Armor Holdings that Alanx was committed to ArmorWorks; (2) Armor Holdings had a practice of obtaining confidential information about ArmorWorks's business; (3) Armor Holdings's ceramic supply strategy involved assessing competitor's supply arrangements; and (4) Armor Holdings was aware that exclusive supply arrangements were commonplace in the industry. (Doc. # 222 at p. 14.)  Assuming this circumstantial evidence is true, these facts are insufficient to establish that Armor Holdings had knowledge about the specific ArmorWorks/Alanx supply arrangement when Armor Holdings acquired ceramic tile from Alanx in August 2005.

ArmorWorks also argues that Armor Holdings was repeatedly told of the ArmorWorks/Alanx supply relationship and the underpinning contractual terms.  In summer 2004, Armor Holdings learned of the exclusive nature of the ArmorWorks/Alanx supply relationship as proscribed in the 2002 MOU.  However, Armor Holdings also learned that the 2002 MOU would expire in December 2004.  The knowledge Armor Holdings acquired did not concern the ArmorWorks/Alanx supply relationship proscribed in the 2005 Agreement, which supply relationship differed from the 2002 MOU.  Armor Holdings did

---

[7]  The "New Supply Agreement" in ArmorWorks's Complaint refers to the 2005 Agreement.

1  not, and could not, interfere with the 2002 MOU by its acquisition of ceramic tile from

2  Alanx, because the 2002 MOU expired prior to Alanx's alleged breach of the 2005

3  Agreement, which serves as the basis for ArmorWorks's claim of tortious interference with

4  contract.

5       ArmorWorks has not provided any facts showing that Armor Holdings had knowledge

6  of the exclusivity arrangements between ArmorWorks and Alanx in the 2005 Agreement.

7  Generally, the materials and conversations cited by ArmorWorks in its briefs concern Armor

8  Holdings's knowledge of the ArmorWorks/Alanx supply relationship under the 2002 MOU.

9  These materials and conversations relate to the 2004 acquisition discussions between Alanx

10  and Armor Holdings.   With respect to Armor Holdings's knowledge of the

11  ArmorWorks/Alanx supply relationship in 2005, ArmorWorks draws the Court's attention

12  to internal Armor Holdings emails.

13       In a March 7, 2005 email, an Armor Holdings's employee acknowledged that

14  ArmorWorks was Alanx's "primary customer." (Doc. # 228 at p. 12.) Armor Holdings does

15  not dispute knowing that ArmorWorks was a customer of Alanx.  However, this email is

16  insufficient to establish that Armor Holdings knew an exclusive supply arrangement existed.

17       In an October 26, 2005 email, an Armor Holdings employee recounted a conversation

18  in which Alanx indicated that its supply agreement with ArmorWorks "was breakable" if

19  Armor Holdings acquired Alanx.  (*Id.*)  Again, Armor Holdings knew of the existence of a

20  supply relationship between ArmorWorks and Alanx.  However, this email does not establish

21  that Armor Holdings knew the supply relationship was exclusive, and that acquiring ceramic

22  tiles from Alanx would violate the exclusivity provisions in the 2005 Agreement.

23       The exclusivity provisions and the supply relationship between ArmorWorks and

24  Alanx differed substantially between the 2002 MOU and the 2005 Agreement.[8] Knowledge

25  

26      [8] The 2002 MOU contained an exclusivity provision, which provided that Alanx

27  could not sell SAPI tiles to any third party for a period of 24-months from the date of the

    U.S. military's approval and issuance of orders, and that at the conclusion of the 24-month

28  exclusivity period, ArmorWorks had the option to enter into another 24-month mutual

of the terms of an original agreement does not impute knowledge of the terms of a subsequent agreement.  The information obtained by Armor Holdings through its acquisition discussions with Alanx concerned the 2002 MOU, not the 2005 Agreement that was effective when the alleged interference occurred.

ArmorWorks appears to conflate the 2002 MOU and the 2005 Agreement throughout its briefs.  However, these are separate and distinct agreements.[9]  ArmorWorks has failed to set forth sufficient facts to establish that Armor Holdings knew Alanx's sale of ceramic tiles to Armor Holdings violated the 2005 Agreement.  A reasonable jury could not infer that Armor Holdings was aware of the terms the ArmorWorks/Alanx supply relationship when it purchased ceramic tile from Alanx in August 2005.  Therefore, the Court grants BAE Systems's Motion for Summary Judgment with respect to the Second Claim for Relief (Tortious Interference with Contract) in ArmorWorks's Complaint, because ArmorWorks failed to establish a *prima facie* case for tortious interference.  Consequently, the Court denies ArmorWorks's Motion for Summary Judgment with respect to this claim.

### 2.    Tortious Interference with Prospective Business Advantage

The fifth element of a claim for tortious interference with prospective business advantage requires the plaintiff to prove that the defendant acted improperly.  *Wells Fargo*, 38 P.3d at 31.  Assuming Armor Holdings knew of the existence of ArmorWorks's business

exclusivity period with Alanx, which it did not.  (Doc. # 224, Ex. 22 at p. 2, ¶ 8.)

The exclusivity provision in the 2005 Agreement provides that Alanx and ArmorWorks may mutually agree that Alanx may sell ceramic tiles directly to licensees of ArmorWorks or other approved entities, provided that the minimum supply requirements of ArmorWorks are met, a sales commission is paid to ArmorWorks, and Alanx does not charge prices lower than Alanx's prices to ArmorWorks.  The 2005 Agreement does not reference the 2002 MOU or a 24-month mutual exclusivity period.  (Doc. # 230-1, Ex. 8 at p. 10, ¶ 18.)

[9]  The 2005 Agreement contains an integration or merger clause, which provides that the 2005 Agreement "is the final, complete and exclusive statement of the agreement between the parties with relation to the subject matter of this Agreement." (Doc. # 230-1, Ex. 8 at p. 11, ¶ 19(e).)

1    expectancy with respect to its supply relationship with the U.S. military, and Armor Holdings

2    intentionally interfered, which caused a breach of the relationship resulting in damage to

3    ArmorWorks, ArmorWorks must also prove that Armor Holdings acted improperly. "[T]he

4    interference must be 'improper as to motive or means' before liability will attach." *Hill*, 35

5    P.3d at 421 (quoting *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1043 (Ariz.

6    1985)).

7         Arizona courts analyze a plaintiff's allegations of defendant's improper interference

8    holistically using the following factors: (1) the nature of the actor's conduct; (2) the actor's

9    motive; (3) the interests of the other with which the actor's conduct interferes; (4) the interest

10   sought to be advanced by the actor; (5) the social interests in protecting the freedom of action

11   of the actor and the contractual interests of the other; (6) the proximity or remoteness of the

12   actor's conduct to the interference; and (7) the relationship between the parties. *Wells Fargo*,

13   38 P.3d at 32 (quoting *Wagenseller*, 710 P.2d at 1042).

14        Armor Holdings argues that if it interfered with ArmorWorks's business expectancy

15   with the U.S. military, such interference was not improper due to the competition privilege.

16   Section 768(1)(d) of the Restatement of Torts adopts the rule that a competitor does not act

17   improperly if his purpose, at least in part, is to advance its own economic interests. *See*

18   RESTATEMENT § 768 cmt. g (1979). "[S]omeone who interferes with the prospective

19   contractual rights of another 'for a legitimate competitive reason does not become a

20   tortfeasor simply because he may also bear ill will toward his competitor.'" *Hill*, 35 P.3d at

21   420 (quoting *Bar J Bar Cattle Co. v. Pace*, 763 P.2d 545, 549 (Ariz. App. 1988)).

22        It is undisputed that ArmorWorks and Armor Holdings were competitors in the sale

23   of body armor to the U.S. military. (BAE SOF ¶ 26; AW RSOF ¶ 26.) ArmorWorks has

24   failed to establish, or show a material dispute of facts, that Armor Holdings employed

25   wrongful means in connection with its alleged interference with ArmorWorks's business

26   expectancy. *See* RESTATEMENT § 768(1). As discussed above, there is insufficient evidence

27   to establish that Armor Holdings knew of the exclusivity provisions in the 2005 Agreement.

28   Therefore, it did not employ wrongful means by entering into a supply relationship with

1    Alanx that caused Alanx to breached its contractual relationship with ArmorWorks. Further,

2    the purported existence of ill will between the parties is not sufficient to overcome the

3    competition privilege.

4         Armor Holdings's purpose, *at least in part*, in obtaining ceramic tiles from Alanx was

5    to advance its own economic interests. *See Hill*, 35 P.3d at 420. Armor Holdings was in the

6    business of purchasing ceramic tile in order to manufacture body armor for sale to the U.S.

7    military. Armor Holdings used the tile purchased from Alanx to fill its body armor orders

8    and to advance its economic interests. The competitive privilege applies, and the Court finds

9    that Armor Holdings did not act improperly with respect to ArmorWorks's business

10   expectancy.

11        Because ArmorWorks cannot prove that Armor Holdings acted improperly,

12   ArmorWorks cannot establish a *prima facie* case for tortious interference with prospective

13   business expectancy. Accordingly, the Court grants BAE Systems's Motion for Summary

14   Judgment on the Third Claim for Relief (Tortious Interference with Prospective Business

15   Expectancy) in ArmorWorks's Complaint, and denies ArmorWorks's Motion for Summary

16   Judgment with respect to this claim.

17        **B.    Robinson-Patman Act Claim**

18        ArmorWorks's Complaint alleges that "Armor Holdings knowingly induced or

19   knowingly received the discriminatory pricing from Alanx" in violation of the Robinson-

20   Patman Act, 15 U.S.C. § 13 ("RPA"). (Compl. at ¶¶ 41–48.) The RPA provides that it is

21   unlawful for any person engaged in interstate commerce to discriminate in price between

22   different purchasers of commodities of like grade and quality where the effect of such

23   discrimination may be substantially to prevent competition with any person who either grants

24   or knowingly receives the benefit of such discrimination. 15 U.S.C. § 13(a). However, the

25   RPA allows for price differences in the sale of commodities resulting from differing methods

26   or quantities of the commodities sold, and does not prevent price changes from time to time

27   in response to changing market conditions. 15 U.S.C. § 13(a).

28        The RPA does not reach all cases of buyer receipt of a prohibited discrimination in

price. *Automatic Canteen Co. of Am. v. Fed. Trade. Comm'n*, 346 U.S. 61, 72 (1953).  "It is unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by [the RPA]."  15 U.S.C. § 13(f).   To establish a *prima facie* case for buyer liability under the RPA, ArmorWorks must establish that Armor Holdings *knowingly* received discriminatory prices in violation of the RPA.  *Id.*

A violation does not occur if a buyer only knows that the prices are lower than those offered to other buyers.  "*Any* difference in the prices of similar goods is, of course, price discrimination.  To be forbidden, however, the discrimination must be *illegal*.  A buyer who receives a price differential cannot be liable under the Robinson-Patman Act unless the seller is in violation of the Act as well."  *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.3d 1276, 1283 (9th Cir. 1983).  Accordingly, the discriminatory price that buyers are forbidden to induce does not include price differentials that are not forbidden to sellers under the RPA.  *Automatic Canteen*, 346 U.S. at 70.  Specifically, a buyer is not precluded from inducing a lower price based on cost differences that would provide a seller with a defense to the price discrimination.  *Id.*

ArmorWorks admits that there is no direct evidence that Armor Holdings knew how much Alanx charged ArmorWorks for ceramic tile, but argues that there is sufficient circumstantial evidence to establish that Armor Holdings had actual or constructive knowledge of Alanx's illegal price discrimination.  (Doc. # 222 at p. 24.)  "Although knowledge must be proved, it need not be by direct evidence; circumstantial evidence, permitting the inference that petitioners knew, or in the exercise of normal care would have known, of the disproportionality of the payments is sufficient."  *Am. News Co. v. Fed. Trade Comm'n*, 300 F.2d 104, 110 (9th Cir. 1962) (citing *Automatic Canteen*, 346 U.S. at 80).  The Court finds ArmorWorks's examples of indirect evidence insufficient to establish that Armor Holdings knew or should have known the prices Alanx charged ArmorWorks under the 2005

1   Agreement were higher than the prices paid by Armor Holdings.[10]

2   The indirect evidence ArmorWorks relies on to establish that Armor Holdings knew

3   of Alanx's unlawful price discrimination is speculative and unpersuasive.  ArmorWorks

4   argues that Armor Holdings's specific business strategy was to obtain a better price for

5   ceramic tiles than its competitors.  This business strategy is neither unique to Armor

6   Holdings, nor evidence that Armor Holdings knew it was receiving discriminatory pricing

7   in violation of the RPA.  ArmorWorks next argues that Armor Holdings sought confidential

8   business information regarding ArmorWorks.  However, seeking information does not mean

9   Armor Holdings obtained information.  This allegation is insufficient to establish that Armor

10  Holdings not only obtained business information about ArmorWorks, but that Armor

11  Holdings obtained information regarding the prices for ceramic tile charged to ArmorWorks

12  during the relevant time period.  Finally, contrary to ArmorWorks's position, evidence that

13  Alanx considered its proposed prices to Armor Holdings to be "aggressive" is not evidence

14  that Armor Holdings knew the prices charged to ArmorWorks were discriminatorily higher.

15  This is evidence that Alanx employed bargaining tactics with Armor Holdings, which is not

16  prohibited by the RPA.  This is not evidence of either illegal price discrimination, or Armor

17  Holdings's alleged knowledge of prices paid by ArmorWorks.

18  ArmorWorks also argues that Alanx provided Armor Holdings with detailed

19  information about its supply relationship with ArmorWorks, including prices charged to

20  ArmorWorks.  The facts underlying this allegation relate to the 2002 MOU, and the

21  information was disclosed to Armor Holdings in connection with its discussions regarding

22  the acquisition of Alanx in 2004.  The alleged violations of the RPA occurred after

23  ArmorWorks and Alanx entered into the 2005 Agreement. The information acquired in 2004

24  _____

25  [10]  Further, even if Armor Holdings knew that it paid less for ceramic tiles than
    ArmorWorks, there are defenses to the price discrimination, such as differing methods of
26  production, quantities ordered, and changing market conditions, *see* 15 U.S.C. 13(a).
    Additionally, there is a material dispute as to whether the ceramic tiles purchased by
27  ArmorWorks and Armor Holdings were of like grade and quality.  These issues preclude
28  granting summary judgment in ArmorWorks's favor, because material disputes of fact exist.

1    related to a different type of ceramic tile (SAPI) than the ceramic tile purchased by Armor

2    Holdings in 2005 (ESAPI).  The 2005 Agreement established the prices for ArmorWorks's

3    ESAPI ceramic tile, which was higher than the prices charged for SAPI ceramic tiles under

4    the 2002 MOU.  (BAE SOF ¶ 33; AW RSOF ¶ 33.)

5         Considering ArmorWorks's indirect evidence as a whole, the Court finds that

6    ArmorWorks has not met its burden of establishing a *prima facie* case for violation of the

7    RPA.  ArmorWorks has not shown that Armor Holdings knew that the prices it paid for

8    ceramic tile were discriminatorily low and in violation of the RPA.  Specifically, the

9    evidence is insufficient to show that Armor Holdings knew how much ArmorWorks paid for

10   ceramic tile under the 2005 Agreement, causing the prices Armor Holdings paid to be

11   discriminatorily low.  A reasonable jury could not find for ArmorWorks with respect to its

12   claim for violation of the RPA.  Accordingly, the Court grants BAE Systems's Motion for

13   Summary Judgment on the First Claim for Relief (Violation of the Robinson-Patman Act)

14   in ArmorWorks's Complaint, and denies ArmorWorks's Motion for Summary Judgment with

15   respect to this claim.

16        **C.    Aiding and Abetting Claim**

17        ArmorWorks's final claim for relief alleges that Armor Holdings aided and abetted

18   Alanx's commission of fraud against ArmorWorks.  (Compl. at ¶¶ 60–71.)  ArmorWorks

19   alleges that Alanx made various false representations and fraudulently concealed

20   information, and Armor Holdings provided substantial assistance to Alanx to permit Alanx

21   to profit from its fraudulent conduct.  (Compl. at ¶¶ 62, 70.)

22        Arizona recognizes the tort of aiding and abetting as set forth in the Restatement of

23   Torts, which provides that a person who aids and abets a tortfeasor is liable for the resulting

24   harm to a third person. *Wells Fargo*, 38 P.3d at 23 (citing RESTATEMENT § 876(b)).  Armor

25   Holdings is liable for aiding and abetting fraud, if ArmorWorks proves that: (1) Alanx

26   committed fraud that caused injury to ArmorWorks; (2) Armor Holdings knew that Alanx's

27   conduct constituted fraud; and (3) Armor Holdings substantially assisted or encouraged

28   Alanx in the achievement of the breach. *See id.* (citing *Gomez v. Hensley*, 700 P.2d 874, 876

1   (Ariz. App. 1984) and RESTATEMENT § 876(b)).

2            **1.    Alanx's Fraud**

3        As an initial matter, the Court finds that ArmorWorks has failed to establish that

4   Alanx's alleged misrepresentations constitute fraud.  ArmorWorks alleges that Alanx made

5   misrepresentations in 2005 concerning: (1) the commitment of Alanx's manufacturing

6   capacity to ArmorWorks; (2) the purported production issues causing a failure to satisfy

7   ArmorWorks's orders for ceramic tile; (3) the exclusivity of sales of ceramic tile; (4) the sale

8   of ceramic tile to Armor Holdings; and (5) the pricing differences between ArmorWorks and

9   Armor Holdings.

10        Assuming Alanx made the misrepresentations alleged in the Complaint, and the

11   misrepresentations were false, the representations concerned matters governed by the 2005

12   Agreement between Alanx and ArmorWorks.  "A breach of contract is not fraud." *Spudnuts,*

13   *Inc. v. Lane*, 641 P.2d 912, 914 (Ariz. App. 1982) (citing *Trollope v. Koerner*, 470 P.2d 91,

14   100 (Ariz. 1970)).  The 2005 Agreement provides that Alanx and ArmorWorks may mutually

15   agree that Alanx may sell ceramic tiles directly to licensees of ArmorWorks or other

16   approved entities, provided that the minimum supply requirements of ArmorWorks are met,

17   a sales commission is paid to ArmorWorks, and Alanx does not charge prices lower than

18   Alanx's prices to ArmorWorks.  (Doc. # 230-1, Ex. 8 at p. 10, ¶ 18.)  The misrepresentations

19   alleged in ArmorWorks's complaint concern Alanx's alleged failure to comply with this

20   provision of the 2005 Agreement.  ArmorWorks's claim against Alanx is for breach of

21   contract, and not fraud.

22        Accordingly, ArmorWorks has failed to prove the first element of its claim for aiding

23   and abetting fraud.  ArmorWorks's alleged misrepresentations relate to a breach of the 2005

24   Agreement, and ArmorWorks has failed to prove that Alanx committed a fraud distinct from

25   its obligations under the 2005 Agreement.  Regardless, a material dispute exists as to whether

26   Alanx breached the 2005 Agreement.   Armor Holdings has presented evidence that

27   ArmorWorks, and not Alanx, first breached the 2005 Agreement (AW RSOF at p. 112–13,

28   ¶ 65), which creates a dispute of fact as to whether Alanx even had an obligation to perform

under the 2005 Agreement.

## 2. Awareness of Fraud

Even if ArmorWorks established that Alanx committed fraud, or that a material dispute exists as to whether Alanx committed fraud, summary judgment in BAE Systems's favor is appropriate, because ArmorWorks failed to prove that Armor Holdings was aware of Alanx's fraud. "Because aiding and abetting is a theory of secondary liability, the party charged with the tort must have knowledge of the primary violation." *Wells Fargo*, 38 P.3d at 23. "As this theory of liability depends upon proof of scienter, it must be shown that the defendants knew the conduct they allegedly aided and abetted was a tort." *Dawson v. Withycombe*, 163 P.3d 1034, 1052 (Ariz. App. 2007) (citing *Wells Fargo*, 38 P.3d at 23). Knowledge of the primary violation, may be inferred from the circumstances. *Wells Fargo*, 38 P.3d at 23. "Actual and complete knowledge of the details of the primary tort may not be necessary in all cases; the knowledge requirement may be satisfied by showing general awareness of the primary tortfeasor's fraudulent scheme." *Dawson*, 163 P.3d at 1052. However, an inference of knowledge will not be made lightly. *Federico v. Maric*, 226 P.3d 403, 405 (Ariz. App. 2010). ArmorWorks must establish that Armor Holdings knew that a fraud was being committed, and had a general awareness of Alanx's fraudulent scheme.

ArmorWorks fails to establish that Armor Holdings was aware of the exclusive relationship between ArmorWorks and Alanx under the 2005 Agreement. As stated throughout this Order, ArmorWorks has failed to prove that Armor Holdings had knowledge of the terms of the 2005 Agreement, which was in effect when the alleged fraud occurred. Even though ArmorWorks has shown that Armor Holdings had knowledge of the exclusivity provisions in the 2002 MOU, the 2002 MOU expired before Alanx's alleged fraudulent conduct occurred, and ArmorWorks has not presented sufficient evidence to establish or create a material dispute of fact as to whether Armor Holdings knew that Alanx was in an exclusive supply relationship with ArmorWorks in 2005. Therefore, Armor Holdings did not have knowledge that Alanx was committing fraud by making representations to ArmorWorks about its capacity, production, customers, and prices.

1    Further, ArmorWorks has not provided any direct evidence establishing that Armor
2    Holdings was aware that representations were made by Alanx to ArmorWorks regarding the
3    supply of ceramic tiles in 2005.  While knowledge may be inferred from the circumstances,
4    ArmorWorks fails to present any evidence establishing that Armor Holdings was aware of
5    the exclusive nature of the ArmorWorks/Alanx supply relationship under the 2005
6    Agreement and that Alanx was making representations to ArmorWorks about its supply of
7    ceramic tile.  Even if Armor Holdings was aware of the representations made by Alanx, there
8    is no evidence establishing that Armor Holdings knew those representations were in pursuit
9    of a fraudulent scheme.  In sum, there is no evidence establishing that Armor Holdings knew
10   its purchase of ceramic tiles from Alanx in 2005 was in contravention of ArmorWorks's
11   contractual rights, there is no evidence that Armor Holdings knew the content of Alanx's
12   statements to ArmorWorks regarding the supply of tiles, and there is no evidence that Armor
13   Holdings had a duty to reveal the source(s) of its ceramic tile to ArmorWorks.  (*See* Compl.
14   at ¶ 70.)

15   The circumstantial evidence presented by ArmorWorks is insufficient to create the
16   inference that Amor Holdings had knowledge of Alanx's allegedly fraudulent scheme.
17   Therefore, the Court finds that ArmorWorks has failed to meet its burden of establishing that
18   Armor Holdings knew of Alanx's alleged fraud.   As discussed above, there is also
19   insufficient evidence to establish that Alanx committed fraud.  Accordingly, the Court grants
20   BAE Systems's Motion for Summary Judgment on the Fourth Claim for Relief (Aiding and
21   Abetting Fraud) in ArmorWorks's Complaint, and denies ArmorWorks's Motion for
22   Summary Judgment with respect to this claim.

23   **IV.    CONCLUSION**

24   Because ArmorWorks failed to establish the existence of elements essential to its case,
25   on which it will bear the burden at trial, the Court grants BAE Systems's Motion for
26   Summary Judgment, and, in so doing, denies ArmorWorks's Motion for Partial Summary
27   Judgment on Liability.

28   Accordingly,

1    **IT IS ORDERED** that BAE Systems' Motion for Summary Judgment (Doc. # 215,

2    228) is **GRANTED**.

3    **IT IS FURTHER ORDERED** that ArmorWorks Motion for Partial Summary

4    Judgment on Liability (Doc. # 222) is **DENIED**.

5    **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment

6    accordingly.

7    DATED this 28th day of March, 2011.

8

9

10    _____
                    James A. Teilborg
                    United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28